[Cite as *State v. Hollins*, 2020-Ohio-4290.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                               No. 107642

    v.                           :

ANITA HOLLINS,                          :

    Defendant-Appellant.         :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 3, 2020

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-616120-E

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, Daniel Cleary and Katherine Mullin, Assistant Prosecuting Attorneys, *for appellee.*

The Law Office of Jaye M. Schlachet and Eric M. Levy, *for appellant.*

PATRICIA ANN BLACKMON, P.J.:

{¶ 1} Defendant-appellant, Anita Hollins, appeals from her convictions for aggravated murder and other offenses. She assigns the following errors for our review:

I. The trial court erred when it accepted jury verdicts with internal inconsistencies within the same counts for complicity requiring that this reviewing court must enter an acquittal for inconsistent verdicts in each count of the indictment where [Hollins] was found guilty of aiding and abetting the underlying offense but not guilty of aiding and abetting the firearm specifications. This court must reconsider its prior holdings regarding inconsistent verdicts based upon applicable changes to the law and also upon the issue of a complicit conviction.

II. [Hollins] was denied a fair trial and due process of law and the trial court erred when it failed to grant [her] request for a mistrial by reasoning that if it did not grant the mistrial a new trial would be ordered on appeal when counsel for [a] co-defendant * * * stated in his closing argument that non-testifying co-defendant * * * entered a plea mid-trial in direct conflict with the trial court's prior curative instruction given to the jury.

III. [Hollins's] convictions must be vacated where she was not found guilty of each and every element of the offenses charged where the jury verdict form(s) fail to indicate the offenses took place in Cuyahoga County, Ohio or otherwise indicate any finding as to venue.

IV. [Hollins's] convictions were not supported by sufficient evidence.

V. [Hollins's] convictions were against the manifest weight of the evidence.

VI. The trial court erred when it prohibited [Hollins] from using fraudulent statements of [a co-defendant] where he was encouraged to lie [in order] to cross-examine him for purposes of impeachment.

VII.    [Hollins's] trial counsel was ineffective in failing to directly appeal the trial court's suppression of fraud and statements of [a co-defendant] from being introduced at trial as privileged communications.

VIII.   [Hollins's] trial counsel was ineffective in requesting a single instruction on aiding and abetting be inserted before count one and for failing to have [Hollins] evaluated for her mental health.

{¶ 2} Having reviewed the record and the pertinent law, we affirm the decision of the trial court.

{¶ 3} Hollins, together with Dana Thomas ("Thomas"), Dwayne Sims ("Sims"), Nigel Brunson ("Brunson"), and Garry Lake ("Lake"), were indicted for aggravated murder, murder, aggravated robbery, kidnapping, felonious assault, and aggravated burglary in connection with the October 24, 2016 killing of Cooley Lounge bartender Melissa Brinker ("Brinker"), and the robbery of patrons at the bar. As is relevant herein, Hollins was charged with aggravated murder in violation of R.C. 2903.01(A), three counts of aggravated murder in violation of R.C. 2903.01(B), six counts of aggravated robbery in violation of R.C. 2911.01(A)(1), aggravated robbery in violation of R.C. 2911.01(A)(3), kidnapping in violation of R.C. 2905.01(A)(3), six counts of kidnapping in violation of R.C. 2905.01(A)(2), aggravated burglary in violation of R.C. 2911.11(A)(1), aggravated burglary in violation of R.C. 2911.11(A)(2), felonious assault in violation of R.C. 2903.11(A)(1), five counts of felonious assault in violation of R.C. 2903.11(A)(2), and murder in violation of R.C. 2903.02(B), all with one-year and three-year firearm specifications.

{¶ 4} Lake subsequently entered into a plea agreement with the state that included the requirement that he testify at trial. Thomas waived a jury trial, asking

the court to decide the charges against him. The charges against the remaining defendants, Hollins, Brunson, and Sims, proceeded to trial in June 2018. As the matter commenced, Hollins moved to introduce evidence of statements made by Lake, with his attorney and investigator, that unbeknownst to Lake's counsel, were recorded during a break in a meeting with the police. Hollins argued that the statements were exculpatory as to her and were also admissible under the crime-fraud exception to the attorney-client privilege. In opposition, the state maintained that the statements were privileged and that the content did not show evidence of a crime or fraud. After reviewing the recording and suppression hearing testimony from Lake, his trial counsel, and Cleveland Police Detective Kathleen Carlin ("Det. Carlin"), the trial court ruled that the statements remained privileged and could not be used to cross-examine Lake.

{¶ 5} Proceeding to the trial on the merits, the evidence presented by the state indicated that in December 2015, Hollins and her then-boyfriend, Marcus Williams ("Williams") were involved in an argument at the Cooley Lounge. As the fight escalated, Hollins was struck in the head with a beer bottle and required medical attention. Hollins accused bartender Jane Svec ("Svec") of setting up the incident, and Hollins was banned from the bar after that incident. The individuals who struck Hollins were charged with felonies. Svec testified at their trial, and the assailants were subsequently acquitted.

{¶ 6} By the fall of 2016, Hollins was dating Brunson. Brunson, Sims, and Thomas were friends, and Lake and Thomas were raised together. Approximately

one week before the murder, Holly Smith ("Smith"), a friend of Hollins, received a Facebook post asking who was working at Cooley Lounge. Smith did not know who posted the question but believed it might have been Hollins. Additionally, Svec changed her work schedule shortly before this posting.

{¶ 7} On the night of October 24, 2016, Lake needed a ride home from a party. Hollins picked him up. Brunson, Thomas, Sims, and Hollins's two children were in the car. Lake testified that he fell asleep during the car ride. When he awoke, Hollins had parked the car at a playground in the area of West 132nd Street in Cleveland, in the vicinity of the Cooley Lounge. Brunson, Thomas, and Sims were no longer in the car.

{¶ 8} Meanwhile, Patrick Lorden ("Lorden"), Melissa Morton ("Morton"), James Fox ("Fox"), and Thomas Bernard ("Bernard") were patrons at the bar, and Brinker was bartending. Patron Thomas Platt, a.k.a. "Andy," was assisting Brinker by emptying the garbage and performing other tasks in exchange for free drinks. The evidence presented at trial indicated that two other individuals subsequently entered the bar, sat together, and ordered a drink. The two requested a cup to share it, and both men drank from the cup. A third man entered the bar. He later threw the cup away, the cup that the other two men drank from, placing it in a receptacle that Andy had recently emptied. The third man joined the first two men at the bar. All three men suddenly produced weapons. The men began robbing and assaulting the patrons. Morton attempted to call the police, but one of the assailants pistol-whipped her. During the attack, Brinker was forced to the rear of the bar and shot

by one of the men who requested a drink.  The other man who requested a drink also went to this area and shot her.

{¶ 9} After the gunmen fled, the patrons discovered Brinker dead in the back of the bar.   The police subsequently retrieved video surveillance evidence and also retrieved the cup that the men drank from before the attack.  DNA analysis of the cup established two profiles.  Analysis showed that Thomas is 4.44 million times more likely than a coincidental match to an unrelated African-American, and Brunson is 130 million times more likely than a coincidental match to an unrelated African-American person.  Police also linked Sims to the attack.

{¶ 10} According to Lake, when the three men returned to Hollins's car, Thomas said that he had to shoot the bartender in the face because she saw him.  Brunson laughed about having to "finish her off," and Hollins said "that's what she get," before driving them away from the scene.

{¶ 11} Police recovered .380- and .45-caliber casings from this area.  Lorden's partially burned wallet and Brinker's partially burned purse were recovered from East 80th Street in Cleveland, near the homes of Brunson, Sims, and Lake.

{¶ 12} Cell phone records indicated that Hollins and Brunson were together at approximately 11:15 p.m., prior to the murder.  Thomas's phone was also in this same area.  Brunson's phone made three *67 calls to the Cooley Lounge, ostensibly to conceal the identity of the caller from the recipient of the call.  By 11:38 p.m., cell phone location data shows Thomas, Brunson, and Sims near the Cooley Lounge.

{¶ 13} After the attack, Thomas confronted Hollins and said that she told him that there were no cameras at the bar. At that point, Hollins said that she was going to sue them civilly in connection with the December 2015 incident when she was attacked.

{¶ 14} The state also presented evidence that prior to trial, Hollins had a conversation with Williams in which she discusses "blow[ing] down on" Smith prior to her testimony, and Williams later responds that "blew down on her like you told me to." According to Det. Carlin, this phrase conveys a threat or intimidation short of physical violence.

{¶ 15} Hollins was acquitted of aggravated murder in violation of R.C. 2903.01(A), one count of aggravated robbery in violation of R.C. 2911.01(A)(1), and all firearm specifications, but she was convicted of all remaining charges. The court merged numerous convictions and Hollins was sentenced to life without parole and various concurrent terms.[1]

**Inconsistent Verdicts**

{¶ 16} In the first assigned error, Hollins argues that the acquittals for aiding and abetting on the firearm specifications creates a fatal inconsistency with her convictions for aiding and abetting on the principal offenses. In support of this

---

[1] Lake pled guilty to and was sentenced to two years in prison; Thomas was found guilty of aggravated murder and other offenses and was sentenced to life without parole and other concurrent terms; Sims pled guilty to two counts of aggravated robbery with three-year firearm specifications and was sentenced to a total of 17 years of imprisonment; Brunson was found guilty of aggravated murder and other offenses and was sentenced to life without parole and other concurrent and consecutive terms.

assigned error, Hollins cites *United States v. Randolph*, 794 F.3d 602 (6th Cir.2015), *State v. Koss*, 49 Ohio St.3d 213, 551 N.E.2d 970 (1990), and *State v. Capp*, 8th Dist. Cuyahoga No. 102919, 2016-Ohio-295.

{¶ 17} "The several counts of an indictment containing more than one count are not interdependent and an inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count." *State v. Lovejoy*, 79 Ohio St. 3d 440, 1997-Ohio-371, 683 N.E.2d 1112, paragraph one of the syllabus.

{¶ 18} In *State v. Perryman*, 49 Ohio St.2d 14, 25-26, 358 N.E.2d 1040 (1976), the jury found the accused guilty of aggravated murder and aggravated robbery, but found the accused not guilty of a specification involving aggravated robbery. In rejecting the claim of a fatal inconsistency, the Ohio Supreme Court stated:

> The sentence was not based on an alleged inconsistency. The guilty verdict for count one reflects the jury's determination that appellant was guilty of the felony-murder. The determinations rendered as to the respective specifications cannot change that finding of guilty. Furthermore, as indicated in R.C. 2929.03(A), one may be convicted of aggravated murder, the principal charge, without a specification. Thus, the conviction of aggravated murder is not dependent upon findings for the specifications thereto. Specifications are considered after, and in addition to, the finding of guilt on the principal charge

*Id.* at 26.

{¶ 19} Later, in *Koss*, the appellant argued the jury's guilty verdict of voluntary manslaughter was inconsistent with the not guilty attendant firearm

specification, and the Ohio Supreme Court concluded the verdicts were inconsistent. *Koss*, 49 Ohio St.3d 213, 551 N.E.2d 970.

{¶ 20} However, appellate courts, including this court, have followed the rationale in *Perryman. See State v. Amey*, 2018-Ohio-4207, 120 N.E.3d 503 (8th Dist.). This court stated:

> Amey relies on *State v. Koss*, 49 Ohio St.3d 213, 551 N.E.2d 970 (1990), in support of his inconsistent-verdicts argument. In that case, the Ohio Supreme Court held that an acquittal on a gun specification but the finding of guilt on the principal offense of voluntary manslaughter for causing the death of a victim with the firearm were inconsistent, and therefore, the voluntary manslaughter conviction was reversed. There was no legal authority or analysis in support of the conclusion reached in that case. *Koss*, in fact, contradicted the Ohio Supreme Court's earlier conclusion on inconsistency between the principal charge and the associated specification. *State v. Perryman*, 49 Ohio St.2d 14, 25-26, 358 N.E.2d 1040, paragraph 3 of the syllabus (1976) ("Where a jury convicts a defendant of an aggravated murder committed in the course of an aggravated robbery, and where that defendant is concurrently acquitted of a specification indicting him for identical behavior, the general verdict is not invalid.").
>
> Although some courts valued *Koss* based on recency, that support has faded. *State v. Given*, 7th Dist. Mahoning No. 15 MA 0108, 2016-Ohio-4746, ¶ 73-75, citing *Perryman* (noting the conflict created by *Koss* and deeming the decision in *Koss* to be of limited value); *see also State v. Lee*, 1st Dist. Hamilton No. C-160294, 2017-Ohio-7377, ¶ 43; *State v. Ayers*, 10th Dist. Franklin No. 13AP-18, 2013-Ohio-5601, ¶ 24. It may be time to consider *Koss* as nothing more than an outlier; however, any such conclusion would be outside the scope of this appeal.

*Id.* at ¶ 17 -18.

{¶ 21} Moreover, this court has consistently held that a not guilty verdict on firearm specifications does not present a fatal inconsistency with a guilty verdict for the principal charge. *See, e.g., State v. Jackson*, 8th Dist. Cuyahoga No. 105541, 2018-Ohio-2131, ¶ 8; *State v. Williams*, 8th Dist. Cuyahoga No. 95796, 2011-Ohio-

5483; *State v. Hardware*, 8th Dist. Cuyahoga No. 93639, 2010-Ohio-4346, ¶ 17, citing *State v. Fair*, 8th Dist. Cuyahoga No. 89653, 2008-Ohio-930; *State v. Robinson*, 8th Dist. Cuyahoga No. 99290, 2013-Ohio-4375. As this court explained in *Fair*, "[i]t is entirely proper for the jury to find appellant guilty of aggravated robbery without a firearm specification." *Id.* at ¶ 26.

{¶ 22} Other courts have also reached the same conclusion and applied *Perryman. See State v. Smith*, 2d Dist. Montgomery No. 26116, 2015-Ohio-1328, ¶ 17; *Ayers*, 2013-Ohio-5601, ¶ 24 ("[A]ppellate courts have limited the precedential impact of the *Koss* decision to cases involving voluntary manslaughter."); *State v. Davis*, 6th Dist. Lucas No. L-00-1143, 2002-Ohio-3046, ¶ 29; *State v. Glenn*, 1st Dist. Hamilton No. C-090205, 2011-Ohio-829, ¶ 70; *State v. Ortega*, 2d Dist. Montgomery No. 22056, 2008-Ohio-1164, ¶ 17; *State v. Robinson*, 6th Dist. Lucas No. L-02-1314, 2005-Ohio-324, ¶ 42.

{¶ 23} Hollins insists, however, that her convictions on the principal charges must be reversed due to the acquittals of the specifications in light of language in *Capp* describing firearm specifications as a "sentencing enhancement." *Id.*, 2016-Ohio-295, ¶ 27. However, in *Capp*, the defendant was convicted of one of the firearm specifications; the core issue is whether the conviction for the specification could be supported on a theory of aiding and abetting. As this court made clear, the sentence was enhanced due to the specification. *Id.* This case does not render the specification and the principal charge the same charge for purposes

of conducting the inconsistency analysis.  Moreover, this court rejected this same argument in *Robinson,* explaining:

> Robinson argues that based upon the Ohio Supreme Court's holding in *State v. Evans*, 113 Ohio St.3d 100, 2007-Ohio-861, 863 N.E.2d 113, [stating that completely dependent upon, the existence of the underlying criminal charge] a firearm specification is considered dependent on the underlying charge, and thus the two should be considered the same count.  This court, however, has consistently rejected this argument.  * * *.
>
> Here, the evidence supported the felony murder, felonious assault, and the discharge of a firearm on or near a prohibited place, the court instructed on the specifications independently and separately, and the convictions on these counts were not dependent upon a finding on the specifications.  Accordingly, consistent with this court's precedent, we overrule the tenth assignment of error.

*Robinson*, 2013-Ohio-4375, ¶ 102-103.

{¶ 24} Here, it is not inconsistent for the jury to conclude that Hollins participated in the offenses for which she was convicted, and also conclude that she did not possess the firearm.  *Accord Smith*, 2015-Ohio-1328, ¶ 17; *Ayers*, 2013-Ohio-5601, ¶ 17  *State v. Ortega*, 2d Dist. Montgomery No. 22056, 2008-Ohio-1164, ¶ 17-20; *State v. Robinson*, 6th Dist. Lucas No. L-02-1314, 2005-Ohio-324, ¶ 42.

{¶ 25}  Similarly, *Randolph* is inapposite.  In that case in which the jury verdict determined both that the defendant engaged in drug conspiracy yet found that none of the charged drugs were "involved in" the conspiracy." *Id.*, 794 F.3d at 607.  In vacating this conviction, the court remarked that because the jury found that none of the charged drugs were "involved in" the conspiracy, it necessarily followed that Randolph could not be guilty of the charged conspiracy.  *Id.* at 611.

**{¶ 26}** Here, however, the acquittal is not inconsistent with the jury's finding that Hollins aided and abetted the commission of the aggravated murder and other offenses. It is entirely consistent for the jury to conclude both that Hollins aided and abetted in the murder but did not possess the firearm. The evidence indicated that Hollins put the plan in motion following the unsuccessful prosecution of her assailants during the prior attack at the Cooley Lounge, that she drove them to the bar, led them to believe there were no cameras, waited for them nearby and drove them from the scene, but did not personally possess the firearms.

**{¶ 27}** In accordance with all of the foregoing, the first assigned error lacks merit.

### Motion for a Mistrial

**{¶ 28}** In the second assigned error, Hollins argues that the trial court erred and deprived her of due process of law when it denied her motion for a mistrial after Brunson's counsel informed the jury during his closing argument that Sims had entered into a plea agreement.

**{¶ 29}** A mistrial can be declared only when the ends of justice require it, and a fair trial is no longer possible. *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991). We review the decisions regarding mistrials for an abuse of discretion. *State v. Garner*, 74 Ohio St.3d 49, 59, 656 N.E.2d 623 (1995). A mistrial should be granted only where the party seeking it demonstrates that he or she suffered material prejudice so that a fair trial is no longer possible. *Franklin*.

{¶ 30} In *State v. Davis*, 10th Dist. Franklin No. 18 Ap-921, 2019-Ohio-4692, the court considered this same argument that Hollins now raises and held the court did not abuse its discretion in light of its subsequent curative instruction. "Curative instructions are presumed to be an effective way to remedy errors that occur during trial." *Id.* at ¶ 34, quoting *State v. Brown*, 10th Dist. Franklin No. 15AP-935, 2016-Ohio-7944, ¶ 21, citing *State v. Treesh*, 90 Ohio St.3d 460, 480, 2001-Ohio-4, 739 N.E.2d 749.

{¶ 31} Here, the record indicates that, earlier in the record, i.e., the time that Sims actually exited the case, the trial court instructed the jury as follows:

> Members of the jury, I am withdrawing from your consideration the case against Dwayne Sims. That case has been disposed of and is no longer before you for decision. You are to deliberate in this case only concerning the complaints pending against Nigel Brunson and Anita Hollins. You are not to speculate about why the case against Dwayne Sims has been withdrawn from your consideration, and it is not to influence your verdicts concerning Nigel Brunson and/or Anita Hollins in any way.
>
> Your responsibility now is to decide the charges that remain pending against Nigel Brunson and Anita Hollins based solely on the evidence against him and her.

{¶ 32} Later, after counsel for Brunson referenced Sims and the plea during his closing argument, the trial court gave a curative instruction. The court stated, "Ladies and gentlemen of the jury, you are to wholly disregard the last statement that was made by Mr. Williams with regard to a co-defendant."

{¶ 33} In accordance with the foregoing, we conclude that the trial court did not err in denying the motion for a mistrial. The court's two instructions to the jury, including the instruction when Sims exited the case and the instruction following

Brunson's counsel's remark were sufficient to ameliorate any risk of prejudice to Hollins. *Accord Davis*, 2019-Ohio-4692, ¶ 29-35.

{¶ 34} This assignment of error is without merit.

**Venue**

{¶ 35} In the third assigned error, Hollins argues that the state failed to establish that the offenses occurred in Cuyahoga County.

{¶ 36} The state must prove that venue is proper beyond a reasonable doubt. *State v. Hampton*, 134 Ohio St.3d 447, 2012-Ohio-5688, 983 N.E.2d 324, ¶ 19; quoting *State v. Headley*, 6 Ohio St.3d 475, 477, 453 N.E.2d 716 (1983). "Evidence of proper venue must be presented in order to sustain a conviction for an offense." *Hampton* at ¶ 20. However, it is not essential that the venue of the crime be proved in express terms, provided it is established by all the facts and circumstances beyond a reasonable doubt that the crime was committed in the county and state as alleged in the indictment or criminal affidavit. *State v. Gribble*, 24 Ohio St.2d 85, 263 N.E.2d 904 (1970), paragraph two of the syllabus; *State v. Vrona*, 47 Ohio App.3d 145, 150, 547 N.E.2d 1189 (9th Dist.1988); *State v. Shedwick*, 10th Dist. Franklin No. 11AP-709, 2012-Ohio-2270, ¶ 37.

{¶ 37} In this matter, the evidence indicated that the offenses occurred within Cleveland's first police district, in the area of Cooley Avenue and West 130th Street. The state also presented evidence that this area is within Cuyahoga County, Ohio. Moreover, all of the instructions for the offenses included the following provision, "you must find beyond a reasonable doubt that on or about the 24th day

of October, 2016 and in Cuyahoga County, Ohio, the defendants did * * *." Thus, insofar as the offenses occurred in Cuyahoga County and the defendants were convicted of the offenses, the facts and circumstances established venue herein.

{¶ 38} Insofar as Hollins complains that the verdict forms to not reference venue or require a finding as to venue, the record does not reveal an objection. Moreover, the court in *Shedwick*, rejected the same challenge to the verdict forms and stated:

> In this case, the jury verdict forms for the aggravated robbery and aggravated burglary charges contained language specifying that the jury found appellant guilty of each count as it was charged in the indictment. Each count of the indictment specified that the charged crime occurred in Franklin County. Moreover, the jury instructions directed the jurors that, in order to find appellant guilty of the charged crimes, they must find beyond a reasonable doubt that the crimes were committed in Franklin County. The language of the verdict forms, which were signed by all members of the jury, along with the language used in the indictment, establishes that the jury found that the crimes were committed in Franklin County. Thus, there was no error with respect to venue in the jury verdict forms.

*Id.*, 2012-Ohio-2270 at ¶ 44. *Accord State v. Hendrix*, 11th Dist. Lake No. 2011-L-043, 2012-Ohio-2832, ¶ 99.

{¶ 39} Similarly, in this case, each count of the indictment charged that the offenses occurred in Cuyahoga County, and the court's instructions to the jury informed them that the state alleged that the offenses occurred in Cuyahoga County. We find no prejudicial error in connection with the verdict forms.

**Sufficiency of the Evidence**

{¶ 40} In the fourth assigned error, Hollins argues that there is insufficient evidence to support her convictions for aiding and abetting in the offenses of aggravated murder, aggravated robbery, kidnapping, aggravated burglary, felonious assault, or murder, because the evidence established only that she drove others to the Cooley Lounge. Hollins states that she did not engage in a plan manifesting the purpose to kill, and the evidence indicated that it was only during the offenses that Brinker learned the identity of the assailants so they shot her.

{¶ 41} A sufficiency challenge requires a court to determine whether the state has met its burden of production at trial and to consider not the credibility of the evidence but whether, if credible, the evidence presented would support a conviction. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶ 42} "A person aids or abets another when he supports, assists, encourages, cooperates with, advises, or incites the principal in the commission of the crime and shares the criminal intent of the principal." *State v. Langford*, 8th Dist. Cuyahoga No. 83301, 2004-Ohio-3733, ¶ 20, citing *State v. Johnson*, 93 Ohio St.3d 240, 2001-Ohio-1336, 754 N.E.2d 796. "A defendant may 'aid' or 'abet'

another in the commission of an offense by his words, gestures, deeds, or actions." *Capp*, 2016-Ohio-295, at ¶ 25. However, "the mere presence of an accused at the scene of a crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor." *State v. Widner*, 69 Ohio St.2d 267, 269, 431 N.E.2d 1025 (1982). "Mere association with the principal offender * * * is [also] insufficient to establish complicity." *State v. Hoston*, 8th Dist. Cuyahoga No. 102730, 2015-Ohio-5422, at ¶ 13, citing *State v. Doumbas*, 8th Dist. Cuyahoga No. 100777, 2015-Ohio-3026. The surrounding facts and circumstances can be used to determine a defendant's intent. *Johnson* at 245. "Participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed." *Id.* Acts which aided or abetted another include those which "supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime * * *." *Id.*

{¶ 43} Aggravated murder under R.C. 2903.01(B) provides, in relevant part, that "[n]o person shall purposely cause the death of another * * * while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit * * * aggravated burglary * * *." R.C. 2903.01(B). Pursuant to R.C. 2901.22(A):

> A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature.

{¶ 44} Where a defendant enters into a common design with others to commit armed robbery by the use of force, violence, and a deadly weapon, and all the participants are aware that an inherently dangerous instrumentality is to be employed to accomplish the felonious purpose, a homicide that occurs during the commission of the felony is a natural and probable consequence of the common plan that is presumed to have been intended. *State v. Thomas*, 2015-Ohio-4932, ¶ 46, 50 N.E.3d 967 (5th Dist.), citing *State v. Jester*, 32 Ohio St.3d 147, 153, 512 N.E.2d 962 (1987). *See also State v. Clark*, 55 Ohio St.2d 257, 378 N.E. 2d 597 (1978); *State v. Whitfield*, 2d Dist. Montgomery No. 22432, 2009-Ohio-293, ¶ 143; *State v. Johnson*, 8th Dist. Cuyahoga No. 60402, 1992 Ohio App. LEXIS 1752 (Apr. 2, 1992). *Accord Capp*, 2016-Ohio-295, at ¶ 31.

{¶ 45} In this matter, there was sufficient evidence to demonstrate that a Hollins entered into a common design with others to commit armed robbery by the use of force, violence, and a deadly weapon, and all the participants are aware that an inherently dangerous instrumentality is to be employed to accomplish the felonious purpose. Additionally, a homicide occurred during the commission of the planned offenses and it was a natural and probable consequence of the common plan that is presumed to have been intended. Here, the record shows that in December 2015, Hollins was attacked and injured during a fight at the Cooley Lounge. She accused Svec of setting up the attack. The assailants were acquitted in a trial during which Svec testified. After that, there is some evidence from Smith that Hollins may have inquired about who was working at the bar. Hollins contacted

Williams to "blow down" to Smith prior to her testimony during the instant trial. Svec changed her work schedule shortly before the murders. Hollins was with Brunson, Thomas, and Sims immediately prior to the murders. She drove Brunson, Thomas, and Sims to the bar. Brunson made calls to the bar in which he attempted to conceal the number from which he was calling. Hollins remained parked nearby while the assailants were inside the bar, then drove them from the scene. Brunson, Thomas, and Sims attacked and robbed the patrons. Thomas shot Brinker, then Brunson shot her in the face. Upon learning that Thomas shot the bartender and that Brunson "finished her off," Hollins said, "that's what she get." After the murders, Thomas confronted Hollins about her prior claim that there were no cameras at the bar.

{¶ 46} Viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offenses proven beyond a reasonable doubt. From the evidence presented, a jury could reasonably conclude that Hollins participated in the crimes at issue and shared criminal intent in light of her actions and statements both before and after the shooting. Given the state's evidence, a jury could reasonably conclude that she aided and abetted in the planning and commission of the offenses. The jury could conclude that she entered into a common design with others to commit the offenses which involved weapons, and that the murder occurred during the commission of the planned offense and was a natural and probable consequence of the common plan. *Accord Capp*; *State v. Holbrook*, 6th Dist. Huron No. 14-H-003, 2015-Ohio-4780, ¶ 56-58 (The

evidence showed that defendant aided the codefendant by driving him to the location where the codefendant hit the victim in the head with a crowbar after a social media war.).

{¶ 47} The fourth assigned error is without merit.

**Manifest Weight of the Evidence**

{¶ 48} In the fifth assigned error, Hollins argues that her convictions are against the manifest weight of the evidence. She argues that although there is evidence that she drove the others to the bar, she did not know what was going to happen, and Brinker was killed only after she saw Thompson's face during the robbery.

{¶ 49} "[W]eight of the evidence involves the inclination of the greater amount of credible evidence." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Weight of the evidence concerns "the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387. The reviewing court must consider all the evidence in the record, the reasonable inferences, and the credibility of the witnesses to determine "'whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983).

{¶ 50} Here, the record indicates that Hollins's attackers were acquitted during the December 2015 attack at the Cooley Lounge. Hollins blamed Svec for the

incident. Prior to the murders, Smith believed that Hollins attempted to determine who was working at the bar. Hollins and Williams communicated about contacting Smith prior to trial. Hollins drove the assailants to the bar and waited at a nearby park. Upon learning the bartender was killed, Hollins said, "that's what she get." Thomas subsequently confronted Hollins about her prior claim that there were no cameras at the bar, and she stated that she was going to file a civil action against the bar. Cell phone data showed that the assailants were together before during and after the offenses.

{¶ 51} In this matter, we cannot say that in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. A reasonable factfinder could conclude that Hollins planned the offenses after her assailants were acquitted and that she aided and abetted in the commission of the offenses. The convictions are not against the manifest weight of the evidence

{¶ 52} The fifth assignment of error is without merit.

**Statements Made During Break in Lake's Meeting with Police**

{¶ 53} In the sixth assigned error, Hollins argues that the trial court erred in concluding that she could not cross-examine Lake regarding his statements to his trial attorney and his investigator that were recorded, unbeknownst to his attorney, during a break in a meeting with the homicide detectives. Hollins maintains that they are exculpatory to her. She also claims that these statements were made in

furtherance of a fraud so they come within the crime-fraud exception to the attorney-client privilege and could have been used for impeachment of Lake.

{¶ 54} As an initial matter we note that R.C. 2317.02(A) provides that an attorney "shall not testify * * * concerning a communication made to the attorney by a client in that relation or the attorney's advice to a client." Waiver involves the client's relinquishment of the protections of R.C. 2713.02(A) once they have attached. Further, Ohio recognizes the crime-fraud exception to prevent concealment of attorney or client wrongdoing. *Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.*, 127 Ohio St.3d 161, 2010-Ohio-4469, 937 N.E.2d 533, ¶ 3. The court explained that the privilege does not attach in a situation where the advice sought by the client and conveyed by the attorney relates to some future unlawful or fraudulent transaction. Advice sought and rendered in this regard is not worthy of protection, and the principles upon which the attorney-client privilege is founded do not dictate otherwise. *Id.* at ¶ 27. In *State ex rel. Nix v. Cleveland*, 83 Ohio St.3d 379, 385, 1998-Ohio-290, 700 N.E.2d 12, the court explained:

> A party invoking the crime-fraud exception must demonstrate that there is a factual basis for a showing of probable cause to believe that a crime or fraud has been committed and that the communications were in furtherance of the crime or fraud. *United States v. Jacobs* (C.A.2, 1997), 117 F.3d 82, 87. The mere fact that communications may be related to a crime is insufficient to overcome the attorney-client privilege. Id. at 88, quoting *United States v. White* (C.A.D.C.1989), 281 U.S. App. D.C. 39, 887 F.2d 267, 271.

*Id.* at 384.

{¶ 55} "Once there is a showing of a factual basis, the decision whether to engage in an in camera review of the evidence lies in the discretion of the * * * court." *Id.*

{¶ 56} Under *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

{¶ 57} In this matter, as to waiver, Det. Carlin testified that she learned through Lake's attorney that he wanted to make a statement and that he would be able to make identification of four individuals. To Hollins, this constituted a waiver of the privilege. Lake's counsel, on the other hand, stated that he informed Det. Carlin only that Lake wanted to proffer according to his knowledge, thereby leaving the attorney-client privilege intact. He also stated that that he requested the break and asked the detectives to leave the room because he "didn't feel my client was clearly explaining[.]" After the detectives left the room, he did not know that they were being recorded. The trial court also heard from Lake about the circumstances of his photo identification of suspects. Lake stated that he told his attorney the names and that he told "them" the names, but this statement lacks clarity in terms of time and who "them" was. The state strongly opposed the motion and stated that the conversation involved a "back and forth" "about a prior discussion" and information Lake had previously provided to the attorney. The court stated that it reviewed the tape and had its own conclusion and opinion about what it shows. The

court concluded that the facts were insufficient to show that Lake had waived his attorney-client privilege prior to the inadvertent recording. The court ruled that prior to his recorded statement, Lake spoke with his attorney and gave information that was not yet to be divulged until the official statement. We find no abuse of discretion. The privilege belongs to Lake. There is nothing in the record from which we can conclude that it was waived or otherwise vitiated.

{¶ 58} This assigned error lacks merit.

## Ineffective Assistance of Counsel

{¶ 59} In the seventh assigned error, Hollins argues that her trial counsel was ineffective for failing to take an interlocutory appeal from the trial court's ruling forbidding the cross-examination of Lake on statements made between Lake, his attorney, and investigator during a break in their meeting with police.

{¶ 60} In order to establish a claim of ineffective assistance of counsel, a defendant must establish that counsel's performance fell below an objective standard of reasonable representation. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. Second, a defendant must also demonstrate that he was prejudiced by counsel's performance. *Id.* To show that he has been prejudiced by counsel's deficient performance, the defendant must prove that, but for counsel's errors, the result of the trial would have been different. *Bradley* at paragraph three of the syllabus.

**{¶ 61}** Here, this court determined that no error occurred in connection with the court's ruling denying Hollins request to cross-examine Lake about the statements Lake, his counsel and investigator made during the break in the meeting with police. Accordingly, a claim of ineffective assistance of counsel based upon the failure to take an interlocutory appeal on this ruling must likewise fail. *See State v. Henderson*, 39 Ohio St.3d. 33, 528 N.E.2d 1237 (1989).

**{¶ 62}** The seventh assigned error is without merit.

### Ineffective Assistance as to Charge and Competency / Sanity

**{¶ 63}** In the eighth assigned error, Hollins that her trial attorney provided ineffective assistance of counsel by requesting a single aiding and abetting instruction for Count 1, aggravated murder in violation of R.C. 2903.01(B). She also argues that her trial counsel was ineffective for failing to request sanity and competency evaluations because the PSI prepared in this matter indicates that she "reported that she was diagnosed with Bipolar, Depression, PTSD, Schizophrenia, and Anxiety" and was taking medication while in jail.

### 1. Aiding and Abetting Instruction

**{¶ 64}** Hollins argues that her trial counsel was ineffective in requesting a single instruction on aiding and abetting was given prior to the instructions on Count 1 and was not repeated throughout the charge. She also complains that in instructing the jury on felony murder in violation of R.C. 2903.01(B), the court did not clearly advise the jury that it was required to find that she had purpose to cause the murder of Hollins and not just the purpose to engage in the underlying felony.

**{¶ 65}** Generally, "[i]n examining errors in a jury instruction, a reviewing court must consider the jury charge as a whole and 'must determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights.'" *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, 114 N.E.3d 1092, ¶ 115, quoting *Kokitka v. Ford Motor Co.*, 73 Ohio St.3d 89, 93, 652 N.E.2d 671 (1995), quoting *Becker v. Lake Cty. Mem. Hosp. W.*, 53 Ohio St.3d 202, 208, 560 N.E.2d 165 (1990). Whether the jury instructions correctly state the law is a question that is reviewed de novo. *State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 135.

**{¶ 66}** Turning to the first argument raised herein, this court has approved giving a single aiding and abetting instruction with instructions on other principal offenses. *See State v. Crump*, 8th Dist. Cuyahoga No. 107460, 2019-Ohio-2219, ¶ 53, citing *State v. Singleton*, 8th Dist. Cuyahoga No. 98301, 2013-Ohio-1440, ¶ 23.

**{¶ 67}** With regard to the second argument raised herein, R.C. 2903.01(B) defines aggravated murder as follows:

> [N]o person shall purposely cause the death of another or the unlawful termination of another's pregnancy while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit, kidnapping, rape, aggravated arson, arson, aggravated robbery, robbery, aggravated burglary, burglary, trespass in a habitation when a person is present or likely to be present, terrorism, or escape.

**{¶ 68}** Purpose is defined in R.C. 2901.22(A) as follows:

> A person acts purposely when it is his specific intention to cause a certain result, or when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to

accomplish thereby, it is his specific intention to engage in conduct of that nature.

{¶ 69} Purpose to kill is required in order to establish the offense of aggravated murder. *State v. Phillips*, 74 Ohio St.3d 72, 100, 656 N.E.2d 643 (1995). The complicity statute, R.C. 2923.03(A)(2), provides that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall aid or abet another in committing the offense." "A person aids or abets another when he supports, assists, encourages, cooperates with, advises, or incites the principal in the commission of the crime and shares the criminal intent of the principal." *State v. Langford*, 8th Dist. Cuyahoga No. 83301, 2004-Ohio-3733, ¶ 20, citing Johnson, 93 Ohio St.3d 240, 2001-Ohio-1336, 754 N.E.2d 796.

{¶ 70} In this matter, the jury instructions provided:

The defendants, Nigel J. Brunson and Anita Hollins, are charged with aggravated murder in violation of Revised Code section 2903.01(B) in Counts 2, 3, and 4 of the indictment.

Before you can find one or more of the defendants guilty, you must find beyond a reasonable doubt that on or about the 24th day of October, 2016 and in Cuyahoga County, Ohio, the defendants did purposely cause the death of Melissa A. Brinker while committing or attempting to commit or while fleeing immediately after committing or attempting to commit the offense of aggravated robbery in Count 2, kidnapping in Count 3, and aggravated burglary in Count 4.

The terms purpose and cause have been previously defined, [as follows:]

To do an act purposely is to do it intentionally and not accidentally. Purpose and intent mean the same thing. The purpose with which a person does an act is known only to that person unless they express it to others or indicate it by their conduct.

The purpose with which a person does an act or brings about a result is determined from the manner in which it is done, the means, or weapon used, and all the other facts and circumstances in evidence.

You may infer a purpose to cause the death of another when the natural or probable consequence of the defendant's act is to produce death in light of all the surrounding circumstances. Such circumstances include the weapon used and its capability to destroy life.

If you find that the calculated to destroy life, you may but are not required to infer the purpose to cause death from the use of the weapon whether an inference is made rests entirely with you.

{¶ 71} In *State v. Whitfield*, 2d Dist. Montgomery No. 22432, 2009-Ohio-293, the court held that this same instruction did not relieve the state of its burden of proving that the defendant had a purpose or specific intent to cause the victim's death. *Accord State v. Lollis*, 9th Dist. Summit No. 26607, 2014-Ohio-684, ¶ 21; *State v. Randleman*, 9th Dist. Lorain No. 17CA011179, 2019-Ohio-3221. We likewise conclude that this instruction in the instant case on aggravated murder, when read in conjunction with the charge on aiding and abetting, was not improper and did not erroneously relieve the state of its duty to prove Hollins's purpose to kill beyond a reasonable doubt.

{¶ 72} In accordance with the foregoing, the first portion of the eighth assignment of error is without merit.

### 2. No Sanity of Competency Evaluations

{¶ 73} Hollins next argues that her trial counsel was ineffective in failing to seek sanity and competency evaluations in this matter because during her pretrial investigation report, she stated that she had been seeing a psychiatrist, she indicated that she suffered from bipolar, depression, post-traumatic stress disorder,

schizophrenia, anxiety, and also reported prior suicide attempts. She was prescribed medication while in jail.

{¶ 74} A person who "lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense" may not stand trial. *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, ¶ 155, citing *Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). "Fundamental principles of due process require that a criminal defendant who is legally incompetent shall not be subjected to trial." *Id.*, citing *State v. Berry*, 72 Ohio St.3d 354, 359, 650 N.E.2d 433 (1995).

{¶ 75} An adult defendant is presumed competent to stand trial:

> A defendant is presumed to be competent to stand trial. If, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court shall find the defendant incompetent to stand trial * * *.

R.C. 2945.37 (G); *Berry* at 360.

{¶ 76} The defense bears the burden of production to rebut the presumption of competence. *State v. Williams*, 23 Ohio St.3d 16, 19, 490 N.E.2d 906 (1986).

{¶ 77} Under R.C. 2945.37(B), a trial court must hold a hearing on the issue of a defendant's competency if the issue is raised prior to trial. *State v. Jirousek*, 8th Dist. Cuyahoga No. 99641, 2013-Ohio-4796, ¶ 10. If the issue of competency is raised after the trial has commenced, however, the court shall hold a hearing on the

issue "only for good cause shown or on the court's own motion." *Id.* The decision to order an evaluation is a matter within the discretion of the trial court. *State v. Thomas*, 97 Ohio St.3d 309, 315, 2002-Ohio-6624, 779 N.E.2d 1017, citing *State v. Rahman*, 23 Ohio St.3d 146, 156, 492 N.E.2d 401 (1986); *State v. Pennington*, 100964, 2014-Ohio-5426, ¶ 26. "[F]ailure to hold a mandatory competency hearing is harmless error where the record fails to reveal sufficient indicia of incompetency." *State v. Macon*, 8th Dist. Cuyahoga No. 96618, 2012-Ohio-1828, ¶ 35, citing *State v. Bock*, 28 Ohio St.3d 108 at 110, 502 N.E.2d 1016 (1986).

{¶ 78} A defendant has a constitutional right to a competency hearing only when there is sufficient "indicia of incompetence" to alert the court that an inquiry is needed to ensure a fair trial. *Berry*, 72 Ohio St.3d 354, 359, 650 N.E.2d 433. Considerations in this regard might include supplemental medical reports, specific references by defense counsel to irrational behavior, and the defendant's demeanor during trial. *State v. Franklin*, 97 Ohio St.3d 1, 2002-Ohio-5304, 776 N.E.2d 26, ¶ 15, citing *State v. Chapin*, 67 Ohio St.2d 437, 424 N.E.2d 317 (1981).

> The right to a hearing rises to the level of a constitutional guarantee when the record contains sufficient 'indicia of incompetency' to necessitate inquiry to ensure the defendant's right to a fair trial. Objective indications such as medical reports, specific references by defense counsel to irrational behavior, or the defendant's demeanor during trial are all relevant in determining whether good cause was shown after the trial had begun.

*State v. Thomas*, 97 Ohio St.3d 309, 2002-Ohio-6624, 779 N.E.2d 1017, ¶ 37 (internal citation omitted).

{¶ 79} In this matter, we find no error in the trial court failing to hold a competency hearing after trial had commenced. The record does not contain indicia of incompetency. There is no evidence that Hollins was incapable of understanding the proceedings or of assisting counsel in her defense. At no time did her experienced trial counsel mention any irrational behavior, nor suggest that she was incompetent. As to the claimed diagnoses, Hollins had no information about where she had been evaluated, diagnosed, or treated, and no information about the medication she had previously received. She also had a significant offense history and involvement in a civil matter involving the improper transfer of real estate, and there is no indication that she was incapable of understanding the charges against her or unable to assist in her defense. We find no error in the trial court failing to hold a competency hearing after obtaining the PSI prior to sentencing. *Accord State v. Harris*, 8th Dist. Cuyahoga No. 102124, 2015-Ohio-5409

{¶ 80} Moreover, as to the claimed medication and diagnoses, we note that although Hollins was on Buspar and Visparil while in jail, the "fact that a defendant is taking antidepressant medication or prescribed psychotropic drugs does not negate his competence to stand trial." *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 71. Furthermore, a defendant is not presumed to be incompetent solely because he is receiving or has received treatment for mental illness. The mere fact that appellant was taking these medications does not necessarily render him incompetent. R.C. 2945.37(F); *Bock*, 28 Ohio St.3d 108, 110, 502 N.E.2d 1016 ("A defendant may be emotionally disturbed or even psychotic and

still be capable of understanding the charges against him and of assisting counsel."). As to the remainder of the information, Hollins could not remember who when or where she was diagnosed, could not name her treatment provider, or describe the services she received. We conclude that counsel was not ineffective for failing to seek a competency or sanity evaluation. *Accord State v. Price*, 8th Dist. Cuyahoga No. 100981, 2015-Ohio-411.

{¶ 81} The eighth assigned error lacks merit.

{¶ 82} Judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON, PRESIDING JUDGE

ANITA LASTER MAYS, J., and
RAYMOND C. HEADEN, J., CONCUR